UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| INTERCONNECT MEDIA NETWORK SYSTEMS, LLC dba SIMULTV | CIVIL ACTION NO. 21-4212 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DEVELOPERS & MANAGERS GROUP, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 22) filed by Defendant, Developers & Managers Group, LLC ("DMG"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the alternative, to transfer venue. Plaintiff Interconnect Media Network Systems, LLC, d/b/a SimulTV ("SimulTV"), filed an opposition (Record Document 31), and DMG filed a reply (Record Document 35). DMG's co-defendant, Maybacks Global Entertainment, LLC, d/b/a Holyfield TV Networks ("Maybacks"), joined DMG's Motion to Dismiss (Record Documents 28 and 30). For the following reasons, DMG's Motion to Dismiss is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of a contractual relationship between SimulTV and DMG, which was born from contractual relationships between SimulTV and Maybacks and DMG and Maybacks.[1] SimulTV is a media service provider that owns a streaming platform. See Record Document 13 at ¶¶ 27, 29. SimulTV is a limited liability company ("LLC") whose sole member is domiciled in Virginia. See id. at ¶¶ 14-15. DMG is an LLC whose sole

---

[1] Unless otherwise noted, these facts are taken from the Amended Complaint. As discussed more fully below, uncontroverted allegations in the Complaint must be taken as true for purposes of the Rule 12(b)(2) and 12(b)(3) motions. See Law and Analysis Section I, supra.

member is domiciled in Louisiana. See id. at ¶ 17. Maybacks is an LLC whose sole member is domiciled in Arizona. See id. at ¶¶ 18-19.

As part of its business, SimulTV contracts with owners of over-the-air ("OTA") television stations to enable SimulTV to air channels on those television stations. See id. at ¶¶ 35-36. In March 2019, SimulTV and Maybacks executed a License Rights agreement, wherein Maybacks would find OTA television stations interested in airing their channels on SimulTV's streaming platform. See id. at ¶¶ 40-43.

DMG owns three OTA television stations in Louisiana, located in Shreveport, Monroe, and Alexandria. See id. at ¶¶ 53-54. DMG leases space at broadcast-tower sites to operate the television stations. See id. at ¶ 55. As of December 2020, DMG owed unpaid rent to each of the broadcast-tower owners and was also required by the Federal Communications Commission ("FCC") to upgrade the equipment for the Alexandria and Monroe television stations. See id. at ¶¶ 57-58, 63-64. DMG lacked the funds to pay the outstanding rent and purchase and install the necessary equipment upgrades. See id. at ¶ 65. In December 2020, DMG entered into an agreement with Maybacks wherein Maybacks agreed to, *inter alia*, pay $225,000 to DMG, purchase and/or pay for the installation of equipment at the three television stations, and provide all the programming for the channels to air on the three television stations. See id. at ¶¶ 67-69. However, according to the Amended Complaint, Maybacks never paid the $225,000 to DMG nor performed the other obligations under the contract. See id. at ¶¶ 71-72.

Instead, in February 2021, Maybacks contacted SimulTV to inform it of the agreement between DMG and Maybacks and to discuss Maybacks' inability to satisfy the $225,000 obligation to DMG. See id. at ¶ 75. After negotiations, SimulTV entered into an

agreement with DMG wherein SimulTV agreed to fulfill Maybacks' obligations to DMG and introduced additional terms and rights that SimulTV would acquire pursuant to the agreement. See id. at ¶¶ 74-104. This agreement and the subsequent alleged breaches of it are the subject of the instant suit.

## LAW AND ANALYSIS

### I.     Legal Standards

#### a.  Federal Rule of Civil Procedure 12(b)(2)

A motion pursuant to Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (citations omitted). At this stage in the litigation, the plaintiff need only make a *prima facie* case for personal jurisdiction. See Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 241 (5th Cir. 2008).

In consideration of the motion, the court may consider: "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985). However, the court "should not act as a factfinder and must construe all disputed facts in the plaintiff's favor." Walk Haydel & Assoc., Inc., 517 F.3d at 241. Further, "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) (internal citations omitted).

### b. Federal Rule of Civil Procedure 12(b)(3)

Rule 12(b)(3) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss an action for lack of proper venue. Once a defendant challenges venue by motion, the burden is on the plaintiff to show that the chosen venue is a proper one. See McCaskey v. Continental Airlines, Inc., 133 F.Supp.2d 514, 523 (S.D. Tex. 2001). If no evidentiary hearing is held, the court will accept as true undisputed facts in the plaintiff's pleadings, resolve any conflicts in the evidence plaintiff's favor, and afford the plaintiff the benefit of the doubt when determining the governing facts. See University Rehabilitation Hospital, Inc. v. International Cooperative Consultants, Inc., 2006 WL 1098905 (W.D. La. 2006). Thus, in analyzing a Rule 12(b)(3) motion to dismiss, the court must accept all allegations in the complaint as true and resolve all conflicts in favor of the plaintiff. See Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007). If the Court determines that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought." 28 U.S.C. § 1406(a).

## II. Analysis

### a. Personal Jurisdiction

In the Motion to Dismiss, DMG first argues that this Court lacks personal jurisdiction over DMG, and thus, SimulTV's claims should be dismissed under Rule 12(b)(2). See Record Document 21 at 4.

Under Fifth Circuit precedent, personal jurisdiction over a defendant exists if (1) the state's long-arm statute extends to the defendant, and (2) the exercise of such jurisdiction is consistent with due process. See Johnston v. Multidata Sys. Int'l Corp., 523

4

F.3d 602, 609 (5th Cir. 2008). The Louisiana long arm statute extends as far as is permitted by due process. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640 (5th Cir. 2002). The exercise of personal jurisdiction over a defendant comports with due process only if (1) the defendant has purposefully availed himself of the benefits and protection of Louisiana by establishing "minimum contacts" with Louisiana, and (2) the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. See Allred v. Moore & Peterson, 117 F.3d 278, 285 (5th Cir. 1997).

Under the minimum contacts test, a defendant may be subject to either "general jurisdiction" or "specific jurisdiction." See Ford v. Mentor Worldwide, LLC, 2 F. Supp. 3d 898, 903 (E.D. La. 2014). General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state, even when the cause of action has no relation to those contacts. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984). "The Fifth Circuit has characterized the 'continuous and systematic contacts' test as a 'difficult one to meet.'" Ford, 2 F. Supp. 3d at 903 (citing Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." Johnston, 523 F.3d at 609 (quoting Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002)). The paradigm forums where a corporate defendant is considered "at home" are the corporation's state of incorporation and its principal place of business. Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S.Ct. 746, 760 (2014).

5

Specific jurisdiction exists where a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (quoting Alpine View Co. v. Atlas Copco A.B., 205 F.3d 208, 215 (5th Cir. 2000)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas Turbines Inc. v. Donaldson Co., 9 F.3d 415, 419 (5th Cir. 1993) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 580 (1980)). The Fifth Circuit has formulated a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006) (citations omitted).

Here, DMG argues that the Court lacks general jurisdiction because DMG is "incorporated and domiciled in Baton Rouge, Louisiana," and has its principal place of business in Baton Rouge. See Record Document 21 at 9-10. DMG reasons that because it is only considered "at home" in Baton Rouge, it cannot be considered "at home" in the Western District of Louisiana. See id. However, in arguing that the Court lacks personal jurisdiction, DMG admits to the very inquiry the Court must conduct to determine whether the exercise of personal jurisdiction is proper. By admitting in its brief that DMG is domiciled in and is considered "at home" in Baton Rouge, DMG admits that it is domiciled

in Louisiana, the forum state. Because the minimum contacts test is a *statewide* analysis, the Court finds that DMG is subject to general personal jurisdiction based on the facts DMG admitted. DMG is considered "at home" in Louisiana.

Additionally, the Court notes that Maybacks moved to join in the Motion to Dismiss filed by DMG. See Record Document 28. However, in its Motion, DMG did not make an argument that this Court lacks personal jurisdiction over Maybacks. Neither did Maybacks offer an argument asserting that this Court lacks personal jurisdiction over it. Whether this Court may exercise personal jurisdiction is a defendant-specific inquiry. Therefore, the Court will not construe Maybacks' decision to join in DMG's Motion as an argument that the Court lacks jurisdiction over Maybacks, as no party has either raised or properly briefed that argument.

Thus, the Court finds that the exercise of personal jurisdiction over DMG is proper and DMG's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

### b. Improper Venue

In its Motion to Dismiss, DMG next argues that, even if this Court has personal jurisdiction over the defendants, venue is improper in the Western District of Louisiana. See Record Document 21 at 10.

Venue is governed by 28 U.S.C. § 1391. Section 1391 provides: "[e]xcept as otherwise provided for by law ... this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a). Section 1391(b) instructs that venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

7

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If venue is challenged, the court must determine whether the case falls within one of the three categories. See Trois v. Apple Tree Auction Ctr., Inc., 882 F.3d 485, 493 (5th Cir. 2018). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under section 1406(a)." Id. (quoting Alt. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 56, 134 S. Ct. 568, 577 (2013)).

Venue may be proper in more than one district, and the "substantial part of the events or omissions test does not require that the chosen venue to be the best venue ... the selected district must simply have a substantial connection to the claim." Zurich Am. Ins. Co. v. Tejas Concrete & Materials, Inc., 982 F.Supp.2d 714, 722 (W.D. Tex. 2013) (quoting VP, LLC v. Newmar Corp., No. 11-2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012)). "'[S]ubstantiality' for venue purposes is 'more of a qualitative than quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Univ. Rehab. Hosp., Inc. v. Int'l Co-op. Consultants, Inc., No. 05-1827, 2006 WL 1098905 (W.D. La. Apr. 24, 2006) (quotations and citation omitted). "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial." McClintock v. Sch. Bd. East Feliciana Parish, 299 F. App'x 363, 365 (5th Cir. 2008).

Here, the Court finds that venue is proper in the Western District of Louisiana. DMG argues that Baton Rouge is the only proper venue because the FCC licenses, not the physical equipment, are the subject of the suit. See Record Document 21 at 14. The Court finds this argument unavailing. While the FCC licenses are part of the suit, SimulTV has alleged enough facts in the Amended Complaint for the Court to find that the physical transmission, broadcasting, and other equipment is a substantial part of the action. The television station equipment is physically located in Alexandria, Shreveport, and Monroe. Each of these physical locations is within the Western District of Louisiana. Further, as SimulTV argues, the FCC broadcasting licenses permit DMG to broadcast only in the Western District of Louisiana.

Based on this analysis, the Court finds that this district has a substantial connection to the claim. As such, venue is proper in this district under 28 U.S.C. § 1391(b)(2). DMG's Motion to Dismiss based on improper venue is, therefore, **DENIED**.

### c. Transfer of Venue

Finally, DMG argues that this action should be transferred to the Middle District of Louisiana under 28 U.S.C. § 1404(a). The Court, in its discretion, may transfer the case "[f]or the convenience of the parties and witnesses, in the interest of justice…to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a), see also Peteet v. Dow Chemical, 868 F.2d 1428, 1436 (5th Cir. 1989).

When presented with a motion to transfer venue under § 1404(a), the Court analyzes the public and private interest factors adopted by the Fifth Circuit in In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II") (citing

In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I")). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." Id. at 312. Consideration of the public and private interest factors then follows since these factors are directed to "the convenience of the parties and witnesses" and "the interest of justice[.]" Id. at 315.

DMG's motion seeks transfer of this case to the Middle District of Louisiana. Thus, the Court must first determine whether the proposed destination venue is a proper venue for this suit. As noted above, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

SimulTV asserts proper venue in the Western District of Louisiana based on the location of the physical equipment for the television stations, as discussed at-length above. However, venue may be proper in more than one district. See Tejas Concrete & Materials, Inc., supra. DMG asserts that the Middle District of Louisiana is a proper venue because SimulTV claims that DMG breached the agreement between the parties; DMG executed that agreement in Baton Rouge and any alleged breach occurred at DMG's office in Baton Rouge. See Record Document 21 at 14. Based on this, DMG argues that the Middle District of Louisiana would be a proper venue under 28 U.S.C. § 1391(b)(2).

The Court agrees. Any alleged breach of the agreement between SimulTV and DMG would likely have occurred in DMG's office in Baton Rouge. Further, the FCC licenses are located in Baton Rouge. Therefore, a substantial part of the events giving rise to SimulTV's claim occurred in Baton Rouge, which makes the Middle District of Louisiana another proper venue for this action. However, the inquiry does not end there.

Having determined venue would also be proper in the Middle District of Louisiana, the analysis now focuses on the public and private interest factors first announced in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), and adopted by the Fifth Circuit in Volkswagen II, 545 F.3d at 315. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law governing the case; and (4) the avoidance of unnecessary problems arising from conflicts of laws. See Volkswagen II, 545 F.3d at 315. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of subpoena power to compel witness attendance; (3) the cost of attendance for willing non-party witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. See id. The Court's analysis seeks to determine whether the transferee venue is "clearly more convenient." In re Radmax, Ltd., 720 F.3d 285, 288 (5th Cir. 2013). The Gilbert factors are neither exhaustive, nor individually dispositive. See Volkswagen II, 545 F.3d at 315 (citing Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004) (internal quotation marks omitted)).

Beginning with the public interest factors, the Court considers "administrative difficulties flowing from court congestion." Volkswagen II, 545 F.3d at 315. Here, the Court

11

must consider any known differences in court congestion as between this district and the Middle District of Louisiana. DMG argues that the Middle District is more convenient because this district is "swamped" with hurricane litigation.[2] See Record Document 21 at 17. SimulTV, however, points the Court to data showing the median time between the filing of suit and disposition of the case is shorter in the Western District of Louisiana than the Middle District. See Record Document 31 at 14-15. However, even if the Court were to disregard SimulTV's data, the Court is not aware of any consequential differences in court congestion between districts. The Court, therefore, finds that this factor weighs against transfer.

Next, the Court must consider any localized interests in deciding local disputes within its own district. Volkswagen II, 545 F.3d at 315, 317-18. DMG does not address this factor specifically. SimulTV argues that this factor counsels against transfer because the equipment is located in the Western District, the FCC licenses affect broadcasting within the Western District, and there is a specific dispute regarding the Monroe tower site. See Record Document 31 at 15. Because this dispute affects property located within the Western District of Louisiana, the Court finds this factor weighs against transfer.

The third and fourth public interest factors, *i.e.*, the familiarity of the forum with the law that will govern this case and the avoidance of unnecessary conflicts of law are equal across the Middle and Western Districts of Louisiana.

Addressing the private interest factors, this Court first examines the relative ease of access to sources of proof. DMG argues that the Middle District of Louisiana would be more convenient because its registered office and assets are within that district. See

---

[2] Hurricane cases are predominantly in the Lake Charles division and, therefore, do not adversely affect the docket in other divisions, including Shreveport.

12

Record Document 21 at 16-17. SimulTV, contrarily, argues this factor counsels against transfer because the majority of non-party witnesses reside closer to Shreveport than Baton Rouge and because the broadcasting equipment is currently located in the Western District of Louisiana. See Record Document 31 at 12. Based on the Court's review of the record, it appears to the Court that most of the sources of proof in this case are contracts between the parties, which would make this factor neutral; notwithstanding this, the fact that the physical broadcasting sites are located in the Western District of Louisiana cuts against transfer in this case.

The second private interest factor, the availability of compulsory process to secure the attendance of witnesses, is neutral because both the Middle District and the Western District of Louisiana have subpoena power over witnesses in Louisiana.

The Court finds the third private interest factor to weigh against transfer. This factor regards the cost of attendance at trial for willing witnesses. The Fifth Circuit has adopted the "100-mile rule" for analysis of this factor: if the distance between the proposed and current venue is more than 100 miles, the factor of inconvenience increases in direct relationship to the distance traveled. See Volkswagen I, 371 F.3d at 204-05. DMG did not address this factor specifically in its motion; however, SimulTV pointed the Court to at least six non-party witnesses it believes will be vital in helping establish its claims. See Record Document 31 at 13. In its reply, DMG stated that these witnesses are "immaterial" and thus should not form part of the Court's analysis. Record Document 35 at 9-10. The Court finds that SimulTV provided the Court with enough information to establish that the non-party witnesses it intends to call have, at the very least, relevant information regarding SimulTV's claims.

Four of the six witnesses live closer to Shreveport than to Baton Rouge. See Record Document 31 at 14. In addition, utilizing the 100-mile rule, the two witnesses who reside in or around Haslet, Texas, and Grand Prairie, Texas, would have to travel almost double the distance if this case were transferred. See id. As the Fifth Circuit has stated, "additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Volkswagen I, 371 F.3d at 205. Thus, this factor cannot support transfer to the Middle District of Louisiana, as such a transfer would be clearly more inconvenient for at least two non-party witnesses.

The fourth and final private interest factor encompasses "all other practical problems that make the trial of a case easy, expeditious, and inexpensive." Volkswagen II, 545 F.3d at 315 (citing Volkswagen I, 371 F.3d at 203). DMG does not address this factor. SimulTV argues that this factor is neutral. See Record Document 31 at 14. The Court is unaware of any considerations that would make this factor weigh either in favor or against transfer.

After carefully weighing both the public and private interest factors, the Court finds that DMG failed to prove that the Middle District of Louisiana is a venue that is clearly more convenient than the Western District. As such, DMG's motion to transfer venue is **DENIED**.

## CONCLUSION

Based on the reasons outlined above, this Court finds it has personal jurisdiction and venue is proper—and convenient—in the Western District of Louisiana. Thus, DMG's Motion to Dismiss (Record Document 22) is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of July, 2023.

                                                                    _____
                                                                    S. MAURICE HICKS, JR., DISTRICT JUDGE
                                                                    UNITED STATES DISTRICT COURT