UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| INTERCONNECT MEDIA NETWORK SYSTEMS, LLC | CIVIL ACTION NO. 21-4212 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DEVELOPERS & MANAGERS GROUP, LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss (Record Document 68) filed by Defendant Hiscox Insurance Co. Inc. incorrectly named as Hiscox, Inc. ("Hiscox"), seeking dismissal of the claim against it asserted by Developers & Managers Group, LLC ("DMG"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). DMG filed an opposition (Record Document 71), and Hiscox filed a reply (Record Document 72). For the following reasons, Hiscox's Motion to Dismiss is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises out of a contractual relationship between SimulTV[1] and DMG, which was born from contractual relationships between SimulTV and Maybacks[2] and DMG and Maybacks.[3] As of December 2020, DMG fully owned three television stations located in Shreveport, Monroe, and Alexandria, Louisiana, (the "TV Stations") as well as the FCC licenses coinciding with the TV Stations. See Record Document 4 at 8, 9. DMG leased space at three broadcast-tower sites in each of the cities to house the necessary

---

[1] Interconnect Media Network Systems, LLC, d/b/a SimulTV (hereinafter referred to as "SimulTV")
[2] Maybacks Global Entertainment LLC d/b/a Holyfield TV Networks (hereinafter referred to as "Maybacks")
[3] The history between the parties and the nature of the parties' relationships were discussed at-length in the Court's Memorandum Ruling issued on July 12, 2023. See Record Document 52. That history need not be repeated here. This section will instead focus on the relevant facts as to DMG's claim against Hiscox, SimulTV's insurer.

1

equipment to allow the TV Stations to broadcast. See id. at 9. On December 1, 2020, DMG and Maybacks entered into a contract ("DMG-Maybacks Contract") with an option to purchase 40% of DMG and expressing Maybacks' "intent to sign an actual contract to providing [sic] programming, advertising, and other services while managing the stations." Record Document 13 at 11. DMG, Maybacks, and SimulTV executed a separate contract ("DMG-SimulTV Contract") assigning Maybacks' interests in the DMG-Maybacks Contract to SimulTV. See id. at 9.

On October 15, 2021, DMG sent a default letter to SimulTV alleging ten (10) contractual defaults and demanding that SimulTV cure some of the defaults within three calendar days. See Record Document 13 at 182; see also Record Document 13-7 at 3. DMG claimed that SimulTV failed to comply with the terms of the DMG-SimulTV Contract and refused to cure its alleged defaults. See id. at 21. SimulTV disagreed and filed this lawsuit against DMG and Maybacks to pursue its rights under the DMG-SimulTV Contract on December 8, 2021. See Record Document 1. DMG then filed the Counterclaim against SimulTV and its insurer, Hiscox. See Record Document 62. In its Amended and Supplemental Counterclaim, DMG asserts the following six counts against SimulTV: (1) Breach of Contract-Fraudulent Conversion; (2) Breach of Contract Regarding the Shreveport Station; (3) Breach of Contract Regarding Operating Expenses; (4) Fraud – Contract Alteration; (5) Fraud and Specific Performance regarding a Contract the Sell; and (6) Indemnity. See id. at 58-64. DMG requests that the Court issue judgments declaring rights and obligations related to the contents and alleged breach of the contracts between DMG and SimulTV and award various damages against SimulTV and Hiscox. See id. at 64-65. Default judgment was entered against SimulTV on December 5, 2023.

See Record Document 73. Thus, the only remaining claim in this case is the Counterclaim asserted by DMG against Hiscox.

In its Motion to Dismiss, Hiscox moves to dismiss DMG's third party demand, mislabeled as a counterclaim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), challenging both the merits of DMG's claim and its standing to sue. See Record Document 68. Hiscox first argues that the court lacks subject matter jurisdiction because DMG is not and does not claim to be insured under the Hiscox policy issued to SimulTV and is therefore not a party with the capacity or legal interest to present such a claim against Hiscox. See Record Document 68-1 at 1-2. Thus, DMG lacks standing and does not raise a justiciable conflict against Hiscox. See id. Hiscox then argues that the claims should be dismissed under Rule 12(b)(6) as DMG has no right or interest to institute a suit against Hiscox. See id. at 2. Hiscox asserts that although styled as a declaratory judgment action, DMG's only viable avenue to sue Hiscox as another party's insurer is under Louisiana's Direct Action Statute, La. R.S. § 22:1269 ("the Direct Action Statute"), and because DMG's claims against SimulTV exclusively sound in contract and not tort, the Direct Action Statute does not permit such claims against it. See id.

In response, DMG states that a party aggrieved in contract or in tort by the insured is a third-party beneficiary of a liability insurance policy and thus DMG is a proper party to seek declaratory judgment against Hiscox. See Record Document 71 at 4-5. DMG further asserts that a lawsuit that sets forth numerous theories of recovery, including tort, may in certain circumstances proceed under the Direct Action Statute. See id. at 8. DMG argues that its claims against Hiscox are mixed, sounding in both tort and contract, and therefore DMG can proceed against Hiscox. See id. at 9. Further, DMG argues that it can

proceed without the Direct Action Statute as an indemnitee since it is a third-party beneficiary. See id. DMG finally states that it would be improper to grant the motion to dismiss before conducting discovery to review the actual insurance policies at issue. See id. at 10-11.

In reply, Hiscox argues that Louisiana and Fifth Circuit case law establishes that indemnitees under this type of provision are not third-party beneficiaries of insurance policies. See Record Document 72 at 6. Hiscox states that DMG fails to cite to any case law demonstrating that third-party beneficiaries have standing to bring a declaratory judgment action. See id. at 7. Hiscox also asserts that the contracts between SimulTV and DMG created all duties between the parties and the basis for all DMG's tortious and contractual claims. See id. at 3. Therefore, DMG has failed to show how these claims are not specifically tied to SimulTV's alleged breach of contract and does not have a claim under the Direct Action Statute. See id. at 3. Hiscox states that the issues raised in its motion to dismiss are purely legal and are ripe for adjudication based on the face of the pleadings and applicable law, thus the Court should disregard DMG's argument regarding the need for discovery. See id. at 8.

## LAW AND ANALYSIS

### I.  Legal Standard under FRCP 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." PNC Bank, N.A. v. Ruiz, 989 F.3d 397, 402 (5th Cir. 2021) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "The party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Env't,

523 U.S. 83, 104 (1998). On a motion to dismiss under Rule 12(b)(1), a court must accept as true all the factual allegations in a plaintiff's complaint and view the facts in the light most favorable to the plaintiff. See Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008). If a court finds that the plaintiff does not have standing under this standard, the court must dismiss the plaintiff's claims without prejudice. See Staten v. Harrison Cnty., No. 20-60329, 2021 WL 5766576. At *2 (5th Cir. Dec. 3, 2021); see also Barrett v. Synovus Bank, No. 4:22-CV-253-SDJ-KPJ, 2022 WL 18673311, at *3 (E.D. Tex. Nov. 15, 2022), report and recommendation adopted, No. 4:22-CV-253-SDJ, 2023 WL 1928691 (E.D. Tex. Feb. 10, 2023). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

## II.     Legal Standard under FRCP 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While some specific causes of action have a heightened pleading standard imposed on them by the Rules or statute, that is not the case for claims under Title VII. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). The standard for the adequacy of all complaints under Rule 8(a)(2) is now the "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). If a

pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 550 U.S. at 558 (citations omitted).

### III. Analysis

Hiscox moves to dismiss the DMG's claims for lack of standing under Rule 12(b)(1) and for failure to state a claim on which relief may be granted under Rule 12(b)(6). With respect to Rule 12(b)(1), Hiscox argues DMG lacks standing because it is neither an insured under the terms of the policy issued to SimulTV nor a third-party beneficiary. This

is actually a challenge to the merits of the DMG's claims.[4] As have other courts,[5] this Court will treat Hiscox's Motion only as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Because DMG references the Hiscox policy in its Amended and Supplemental Counterclaim, the Court considers the policy in its ruling. See Wolcott v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011).

DMG does not allege in its amended complaint that it is a named insured, an additional named insured, or a third-party beneficiary. So, DMG fails to plead facts showing that it has standing to sue under the Hiscox policy. See Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary, 2005-2364 (La. 10/15/06), 939 So.2d 1206, 1212. Because DMG fails to plead facts sufficient to show standing, it fails to plead a plausible claim against Hiscox. See Romero v. City of Grapevine, Tex., 888 F.3d 170, 176 (5th Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). And because DMG's Amended Counterclaim is not plausibly pleaded against Hiscox, the Court must dismiss it; the question is whether that dismissal should be with or without prejudice. See Butler v. Am. Sec. Ins. Co., No. 18-0871, 2019 WL 1714231 at *2 (M.D. La. Apr. 17, 2019). That question, in turn, depends on whether DMG can qualify as a third-party beneficiary under Hiscox's policy. See id.

Because the parties invoke this Court's subject matter jurisdiction based on the existence of diversity of citizenship between the parties, the Court must determine whether to apply state or federal law. "Where federal jurisdiction, as here, is based on

---

[4] See Cotton v. Certain Underwriters at Lloyd's of London, 831 F.3d 592, 594-95 (5th Cir. 2016) (recognizing that "standing" to "sue under a contract" is "really an issue of 'contract interpretation' that goes to the merits of the claim" and is different from Article III standing).

[5] See Riley v. Sw. Bus. Corp., 2008 WL 4286631, at *1 (E.D. La. 9/17/2008) (Vance, J.) (citing Prometheus Development Co., Inc. v. Everest Properties, 2008 WL 3822290, at *1 (9th Cir. 2008) (treating a 12(b)(1) motion as a 12(b)(6) motion) (citations omitted); see also Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981) (explaining that 12(b)(6) motions are more protective of the plaintiff's rights than 12(b)(1) motions)).

diversity, [the Court] applies the substantive law of the forum state—[Louisiana]." Pearson v. BP Products North America, Inc., 449 Fed. Appx. 389, 390 (5th Cir. 2011). The Louisiana Civil Code sets forth the guiding principles for construing contracts in Louisiana. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007); Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003).

A plaintiff has standing to sue under an insurance policy without the need for the Direct Action Statute if the plaintiff is a named insured, additional named insured, or is intended as a third-party beneficiary. See Axis Surplus Ins. Co. v. Third Millennium Ins. & Fin. Servs., Inc., 781 F. Supp. 2d 320, 323 (E.D. La. 2011); see also Boudreaux v. Axiall Corp., No. 18-0956, 2022 WL 838923 at *5 (W.D. La. Mar. 21, 2022). In Louisiana, a contract for the benefit of a third-party is known as a *stipulation pour autrui*. See La. Civ. Code arts. 1978-1982. The current jurisprudence provides "three criteria for the Court to consider in determining whether the contracting parties have provided a benefit to a third party: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided [to] the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee." Joseph, 939 So.2d at 1212. "A *stipulation pour autrui* is never presumed." Id. "The party claiming the benefit bears the burden of proof." Id. In Louisiana, the most common method of establishing a *stipulation pour autrui* in the insurance context is to simply name the third party as an additional insured or beneficiary under the policy. See St. Julian v. Diamond M. Drilling, 403 F. Supp. 1256, 1259 (E.D. La. 1975).

The Amended and Supplemental Counterclaim does not reference, and the Court has not found, any manifestly clear language establishing the DMG's rights as a third-

party beneficiary to the policy with Hiscox. DMG alternatively argues that it is a third-party beneficiary as it is an indemnitee under the Indemnity Clause located in Paragraph 9.5 of the Letter of Intent Regarding Purchase of a 40% Ownership Interest and LMA ("LOI"). See Record Document 62-1 at 6-7. Paragraph 9.5 states:

> SimulTV shall indemnify and hold Developers harmless from any claim of any kind arising from the content of the Programming or any action or inaction of SimulTV in connection with this Agreement or the Stations. SimulTV shall carry general liability insurance satisfactory to Developers, including coverage of the Programming to ensure its ability to indemnify Developers. Developers can require proof of coverage. Any necessary licenses for the performance or recording of music or for the rebroadcasts of any programming shall be obtained and paid for by SimulTV

See id. Hiscox argues that Louisiana and Fifth Circuit case law establishes that indemnitees under this type of provision are not third-party beneficiaries of insurance policies. See Record Document 72 at 6. Hiscox relies on Weyerhaeuser Company v. Burlington Insurance Company in arguing that indemnitees are not third-party beneficiaries of insurance policies when the indemnitor insured agrees to indemnification only for its own fault. See id. at 7; 74 F.4th 275 (5th Cir. 2023) (citing Savoy v. Kelly-Dixon, 2022-318, 353 So.3d 981 (La. App. 3rd Cir. 11/23/22)). In Savoy, the case on which the Fifth Circuit relied, the Court stated "[i]f every indemnitee was a 'third party beneficiary' to a commercial liability policy then there would be no reason to have an additional named insured." Savoy, 353 So.3d at 995. The benefit is instead intended for the "Named Insured" (SimulTV) when it owes damages under an insured contract. Weyerhaeuser, 74 F.4th at 292. Thus, DMG has not plead sufficient facts to show that it is a third-party beneficiary under the policy between SimulTV and Hiscox.

### a. Direct Action Statute

Having found that DMG is not a third-party beneficiary, the Court will address the parties' arguments regarding DMG's ability to bring a claim against Hiscox under the Direct Action Statute. The parties disagree as to whether DMG's claims against Hiscox are mixed between delictual and contractual or are solely contractual: Hiscox argues that even if DMG asserted negligence claims, which it maintains DMG did not, any duty owed by SimulTV would necessarily arise out of the contracts, while DMG argues that it has been aggrieved by both contract and tort by SimulTV and can proceed against Hiscox under the Direct Action Statute. See Record Document 72 at 5; Record Document 71 at 9.

The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. Soileau v. Smith True Value and Rental, 2012-1711 (La. 6/28/13), 144 So.3d 771, 775. "The Louisiana Direct Action Statute applies only to torts and not to contract disputes." Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 994-95 (5th Cir. 1985) (internal citation omitted); see also Green v. Auto Club Grp. Ins. Co., 2008-2868, p. 3 (La. 10/28/09); 24 So. 3d 182, 184 ("The Direct Action Statute was enacted to give special rights to tort victims, not to insureds with contract claims against a defendant."). Whether an action states a tort claim depends on the source of the duty that was breached. See Mentz Const. Servs., Inc. v. Poche, 87 So. 3d 273, 276 (La. App. 4th Cir. 3/14/12); see also Magnolia Fin. Grp. v. Antos, No. 15-7144, 2017 WL 3763919 at *2 (E.D. La. Aug. 30, 2017). If the insured breached an obligation that he contractually assumed, whether as an explicit promise or

implied duty, the action sounds in contract. See id. If the insured breached a general duty owed to all persons, then the action sounds in tort. See id.

In Mentz, Louisiana's Fourth Circuit Court of Appeal held that the Direct Action Statute did not apply to a homeowner's claims against a contractor for shoddy work and failure to supervise employees because the claims, even those that "sound[ed] in tort," "ar[o]se from duties set forth in the contract between the parties." Id. at 277. The court further explained that "implicit in every construction contract is the requirement that the work be performed in a good, workmanlike manner, suitable for its intended purpose and free from defects in material or workmanship." Id. at 277-78. The court then held that claims based on implicit contractual terms are also excluded from the Direct Action Statute. See id.

The facts of the instant case are like those in Mentz. The parties concede that the breach of contract claims are not delictual. The "fraud" and "conversion" alleged in DMG's Amended and Supplemental Counterclaim all relate to the business relationship between DMG and SimulTV, which was governed by the contract between DMG and SimulTV. Specifically, DMG's claims that SimulTV aired programs on DMG's stations and received revenues but did not share any profits as required under contract, constituting a fraudulent conversion of funds. See Record Document 62 at 58. Further, DMG alleges that SimulTV committed fraud when it changed the terms of the agreement without consent and committed fraud where it intentionally misrepresented itself and its willingness to consummate the sale at issue. See id. at 60-63. Because "[t]he alleged duties that were breached ... are both explicitly and implicitly set forth in the contract between the parties," and "there are no general tort duties alleged which do not arise as a result of the existence

11

of the contract," the Direct Action Statute does not apply. <u>Mentz</u>, 87 So.3d at 278. Again, the Direct Action Statute only applies when the alleged negligence relates to a general duty, not a duty that arises from a contract. <u>See id.</u>

## CONCLUSION

Based on the reasons outlined above,

**IT IS ORDERED** that Hiscox's Motion to Dismiss (Record Document 68) is **GRANTED**. The claim against Hiscox filed by DMG is **DISMISSED WITH PREJUDICE**.

An judgment consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this <u>16th</u> day of May, 2024.

*/s/ Maurice Hicks/*
S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT